## LATHROPE *v.* THE STATE.

CRIMINAL LAW.—*Intoxicating Liquor.*—*Sale by Servant.*—If a clerk or barkeeper in a saloon sell intoxicating liquor without the knowledge and against the instructions of his employer, the latter is not criminally responsible for the act.

From the Kosciusko Circuit Court.

*Frazer & Encell* and *E. Haymond,* for appellant.

*C. A. Buskirk,* Attorney General, and *R. D. Doyle,* for the State.

WORDEN, J.—Prosecution against the appellant, under the act of February 27th, 1873, for selling, on the 14th of March, 1874, intoxicating liquor to one Rezin Winship, a person in the habit of getting intoxicated. Plea, not guilty, trial by jury, conviction, motion for a new trial overruled and judgment.

The appellant claims that the evidence was radically defective in respect to two material points, viz., the habits of Winship, and the person by whom the liquor was sold to him. With regard to Winship, it may be observed that the evidence shows him to have been a substantial, industrious, well-to-do farmer, living some distance from town, of somewhat bibulous appetite, who, when in town, was occasionally given to excess, but not to such a degree as to materially interfere with his thrift, prudence or prosperity. The evidence that he was "in the habit of getting intoxicated," is not very clear or satisfactory; but as the appellant, as will be shown hereafter, treated him as a person in the habit of getting in that condition, perhaps more from the peculiar character of the times than from the actual habits of the man, we pass this point in the case without further observation.

We come to the other question: Was it shown that the appellant sold the liquor to Winship?

The appellant, it appeared, procured his permit January 31st, 1874. George M. Barrick, on whose affidavit the prosecution was instituted, was sworn as a witness, and testified in respect to the selling as follows:

" Know Henry Lathrope; that's him. Know Rezin Winship; known him for fifteen years. I saw Mr. Rezin Winship in Lathrope's saloon, on the 14th day of March, 1874, about that time. I saw him purchase intoxicating liquor

there on that day. It was lager beer; it is intoxicating; he paid for that; I think he got it of Albert Randels; I may be mistaken, I won't say positive; my recollection is it was Randels; he was clerking for Lathrope in his saloon; he paid for that liquor. Henry Lathrope was in the saloon *somewhere*, in Warsaw, Kosciusko county. He drank it out of a beer tumbler off the counter." On cross-examination, he said:

"On or about the 14th of March; it was on the 14th, if you must have it that day; I put it down in the book; I have it with me; I put it down on the 14th; I wanted to recollect it; it was my business, walking around to see if they were selling liquor in violation of law; they did not say anything about my filing affidavits; I did not ask him who I was to get my pay from; J—— W—— hired me and paid me; five days I worked; that is the only time I saw him take a drink in there; was not in there drinking beer every day; I drank in there three glasses of beer; I would go in and stay two or three minutes at a time.   *   * I wanted to earn my money. I reported the violation to Mr. W——; can't remember who it was that drank with him. I don't know whether I swore before Lutes that Lathrope was not there; I would not be certain as to what I swore yesterday; would not swear positively that Lathrope was there, but think he was some place in the room."

This was the only evidence in the case in relation to the selling, except that to be hereafter noticed.

Hiram F. Berst testified, that he had seen Winship in the appellant's saloon since he got his permit, drinking lemonade; that he asked for beer, but this was refused by Lathrope.

Austin C. Funk testified, that he had known Winship for twenty years; had seen him at Lathrope's saloon trying to get liquor, but that the latter, since he received his permit, invariably refused to let him have it.

Winship testified as follows:

"I have not bought any liquor of any kind of Henry

Lathrope, or in his presence, since he has been selling under his permit. Lathrope refused me every time I tried to get any. I have never got any there, except what I got that day of Randels; did not see anything of Lathrope in the building; he was not there to my knowledge; he might possibly have been in the building, but if he was, I did not see him."

Randels testified:

"Henry Lathrope gave me instructions, when I commenced clerking for him, not to sell any liquor of any kind to Rezin Winship, and frequently since he has given me the same instructions."

The appellant testified, on his original examination, as follows:

"I know Rezin Winship. I got my permit on the 31st day of January, 1874. I refused to let him have any liquor, immediately afterwards, on his first application, and have always refused him since that time; I have not sold him a drop of anything except lemonade since getting my permit, and he has never got a drop of Randels to my knowledge."

The cross-examination developed nothing material, except that the appellant had given Randels directions not to sell to Winship.

An examination of this evidence satisfies us that the conviction cannot and ought not to be sustained. It is apparent that the appellant was trying to keep within the law. He refused to sell to Winship, and gave orders to his clerk not to sell to him. Though it is questionable whether Winship should be regarded as a person in the habit of getting intoxicated, yet, Lathrope, thinking, doubtless, that it would be more prudent and safe not to sell to him, acted accordingly. If Randels sold to him without the knowledge and against the instructions of Lathrope, the latter is not responsible criminally for the act. *O'Leary* v. *The State*, 44 Ind. 91, and cases there cited; *Wreidt* v. *The State*, 48 Ind. 579. The tendency of the evidence, that of Barrick, perhaps, excepted, is to show that the liquor was sold by Randels, without the knowledge or consent and against the express

Lathrope *v.* The State.

instructions of Lathrope. The witness Barrick does not appear in a very enviable light. A hired spy and voluntary informer, he came before the court exhibiting qualities calculated to throw suspicion upon his testimony.

On his examination in chief, he fixed the time of the supposed offence as the 14th of March, 1874, about that time. On his cross-examination, he repeated that it was on or about the 14th of March. But he finally said that it was on that day; that he put it down in the book, and wanted to recollect it. But if it was on that day, and he knew it, having put it down in the book, why did he not say so in the first place, and not make the time indefinite by the use of the word "about," as if to guard against contingencies? He could not remember who it was that drank with Winship. It would seem that his business and purpose should have impressed so material a matter upon his memory. But his lack of memory, either real or simulated, was remarkable; for he said that he did not know whether he swore before Lutes that Lathrope was not there; that he would not be certain as to what he swore yesterday. On his examination in chief, he said that Lathrope was in the saloon *somewhere*, when the liquor was purchased; but on the cross-examination, he said he would not swear positively that Lathrope was there, but thought he was some place in the room. The result of his testimony in respect to the presence of Lathrope when the liquor was sold is, that he did not know, but he thought he was there somewhere in the room. He does not profess to have seen him there. Indeed, if he had seen him, he could have fixed his locality in the room more definitely than "some place in the room." Nor did he assign any reason why he thought Lathrope was there. The witness did not know, but simply thought, that Lathrope was there, no reason being assigned for thinking so. This evidence would not be sufficient to justify a recovery in a civil action, where the question depended upon the presence of Lathrope, much less a conviction in a criminal one.

The case was not, in our opinion, made out, there having

been no sufficient evidence that the liquor was sold with the knowledge or consent of Lathrope.

The judgment below is reversed, and the cause remanded for a new trial.