# Commonwealth *v.* S. A. Johnston, Appellant.

*Criminal law—Agency—Libility of principal for acts of his agent.*

Ordinarily a principal is not held criminally responsible for the acts of his servant or agent, unless he in some way participates in, countenances or approves the criminal act of the agent; nor can a principal be held criminally liable for the act of his agent in opposition to his will and against his orders.

*Agency—Selling liquor without a license.*

Where the owner and proprietor of a drug store instructed his assisants in regard to the manner in which he desired them to conduct his business, instructing them not to sell intoxicating liquors to any one except upon a prescription of a regularly registered physician and for medicinal purposes and not to sell more than once on any one prescription, he cannot be convicted for sales of liquor made in his absence, in contravention of these orders, against his authority and without his knowledge.

*Agency—Instructions by principal to agent—Presumption.*

Every lawful instruction from principal to agent is to be considered as given in good faith until the contrary is shown and then the bona fides of the instruction is for the jury.

*Agency—Cases distinguished and followed—Knowledge of principal.*

This case is not governed by Carlson's License, 127 Pa. 330; Commonwealth v. Sellers, 130 Pa. 32; Commonwealth v. Holstine, 132 Pa. 357; Commonwealth v. Zelt, 138 Pa. 615. These cases hold persons answerable for sales made by themselves and prevent them from pleading ignorance of the knowledge of the nonage or intemperate habits of those to whom they sell. This case is rather governed by Commonwealth v. Junkin, 170 Pa. 197, which holds that a principal is not answerable criminally for the wrongful act of his agent in positive disobedience of his explicit instructions.

*Criminal law—Selling liquor without a license—Druggist—Act of May 13, 1887, sec. 16.*

One indicted for selling liquor without a license under the 15th section of the act of May 13, 1887, may excuse himself and defend as a druggist under the 16th section, if he can prove that his sales were made within the provisions of that section. Otherwise he can be convicted as any other unlicensed person for selling liquor without a license.

Argued May 13, 1896. Appeal, No. 87, April T., 1896, by defendant, from judgment of Q. S. Butler Co., Dec. Sess., 1895, No. 28, convicting defendant for selling liquor without a license. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Defendant was indicted for selling liquor without a license. On the trial Charles Mitchell, among other things, testified:

Q. It was the same prescription, was it?

Objected to.

By the Court: State how many prescriptions you had?

By Counsel: It is proposed to prove by the witness that he repeatedly got a prescription filled and used it until it was worn out.

Defendant objects to the question, which is, whether or not he got liquor from the defendant more than once on the same prescription. Our objection to the question is that the question itself assumes and confirms the existence of such a prescription as is required by law and such an one as is designated in the act of assembly under which the defendant is now being tried; that although the sale of liquor more than once on the same prescription is an offense under this act, it is an independent, distinct offense from the crime for which the defendant is under trial, and is not embraced in the bill of indictment; that the offer would not tend to prove the issue on trial, but would only present to the jury the existence of facts which would constitute another crime, and if received and defendant convicted of the offense now charged, this conviction and sentence would not prevent the commonwealth from preparing an indictment against the defendant at a subsequent court for selling more than once on the same prescription, which is made a distinct offense.

By the Court: The act of 1887 providing a punishment for selling without license excepts, of course, a man who has a license, and the sixteenth section goes further and excepts druggists and apothecaries, who shall not be required to obtain license under the provisions of this act, but shall not sell intoxicating liquors except upon the written prescription of a regularly registered physician, and any one violating shall be guilty of a misdemeanor, and on conviction shall be subject to the same penalties, etc. We think that this would not be a distinct offense. It is an offense against the fifteenth section; if anything it is a defense to that, if he furnished a prescription, but that prescription is only a defense to one sale, and when his sales go beyond that they were without a defense and without a license; we will receive the testimony and give you an exception. [11]

Q. How often did you get liquor on the same prescription at that store?   A. I don't know how often I got it; pretty often; I couldn't say how often.

Defendant made the following offer:

Mr. Bowser: Defendant proposes to prove by the witness on the stand, who is the owner and proprietor of the drug store, and the defendant, that at the time he took charge of this store he placed a registered pharmacist as manager therein, who had his assistant, to run the store; he instructed them particularly in regard to the manner in which he desired them to run his business, and especially so in regard to the sale of intoxicating liquors or spiritus frumenti; that he instructed this registered manager and his assistant not to sell any intoxicating liquors to any one except upon a prescription of a regularly registered physician, and for medicinal purposes, and not to sell to any one except on such prescription; and further that they should not sell more than once on any one prescription; and further that if any sales of liquors of any kind were made in contravention of these orders and instructions, they were made in his absence, against his authority and without his knowledge.

Mr. Forquer: Commonwealth objects to this for the reason that it is immaterial in the trial of this case; that the witness on the stand, the defendant, is admitted to be the owner and controller of this drug store, into which has already gone, within four or six months, some twelve barrels of whisky and sold out. The business for which he hired these people is the sale of drugs, and principally liquor; that was in the line of the business, and therefore he is responsible both civilly and criminally for their acts in the line of the business carved out by them.

Mr. Bowser: Further, to be followed by proof of other witnesses.

By the Court: The defendant here is indicted for violating the fifteenth section of the act of May 13, 1887, entitled, "An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors or any admixtures thereof." The section reads as follows: "Any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquors, or any admixtures thereof, without a license," etc. As a general principle the proprietor or master is not liable for the criminal acts of his servant or agent unless he is care-

less in selecting the agent or has been a particeps criminis in the matter, but in this case the defendant is indicted under a particular statute and one in which we think the question of will or intent is not material, especially where the acts done were done by his authorized clerks or agents or servants, in the line of the duty for which they were employed. The Supreme Court of our state has held in several cases that the question of intent is not a material one under this act, and in the case of Carlson's and Tuttle's Licenses, 127 Pa. 331, it was held that where a hotel man sold intoxicating liquors to a minor he is liable criminally, although he had no knowledge as to the age of the minor and although he appeared to be a man of twenty-three or four years old. The same principle was indorsed in the case of Commonwealth v. Sellers, 130 Pa. 32, and in the case of Commonwealth v. Holstine, 132 Pa. 357, and Judge PAXSON, in deciding the case of Commonwealth v. Zelt, reported in 27 W. N. C. 133, says: "The jury have found that Chivers was a person of known intemperate habits, and their finding is fully justified by the evidence. Was it necessary that a knowledge of such habits must be brought home to the defendants before they could be convicted? In re Carlson's License, 127 Pa. 331, we were considering the case of selling to minors, and it was said in the opinion of the court: "The offense of which the plaintiffs in error were guilty, was that of selling liquor to minors, and the only excuse offered was that they did not know the persons to whom they sold were minors. This ignorance is not a sufficient excuse or justification under the act of assembly. If such a defense could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes." In Commonwealth v. Sellers and Commonwealth v. Holstine, it was held that to sustain a conviction for unlawfully selling intoxicating liquors under the act of 1887, it is not necessary for the commonwealth to prove a criminal intent. If the sale be contrary to law, the intent is immaterial. We are of opinion that selling liquors to persons of known intemperate habits comes within the same rule as selling to minors; that is, the intent is not material. The words in the statute, "persons of known intemperate habits," are descriptive, etc. As a principle of law I can see no difference between the principle announced in this case and in

the one before the court.    Here the defendant is charged with selling or offering for sale and with furnishing to men of intemperate habits.    The sales were made by an agent, and therefore the act of the agent is the act of the principal in all cases unless where the question of intent becomes material to establish the willful action of the defendant.    Under the act of 1887, the law under which we are now acting, I am of opinion and so rule that the question of intent here on the part of the defendant is immaterial to establish a crime as charged, and refuse the evidence and exception noted on part of the defendant; the offer is overruled and exception sealed. [14]

The court below, GREER, P. J., charged the jury as follows :

You have been sworn to try an issue between the commonwealth and S. A. Johnston, the defendant at the bar, on the charge of selling liquors without license in this county.    The grand jury at this term of our court returned a true bill against the defendant, in which there were two counts ; one for selling liquor without license, and the other for selling liquor to men of intemperate habits.    The second count, the one charging the defendant with selling liquor to men of intemperate habits, will not be before you; the commonwealth has seen fit to enter a nolle prosequi, so that the only question to be determined by you is the one of the guilt or innocence on part of the defendant as to selling liquor without license.

We have in our state what is known as the Brooks law, the act of assembly, approved by the governor of this state on the 13th of May, 1887 ; the act which regulates the sales of liquor and licensing of hotels and taverns, etc.    It is called the Brooks law, because it was introduced in the legislature by a member of the house from Philadelphia, by a man by the name of Brooks, and it is the law which now regulates the sale and traffic of liquor and provides for the punishment of any violation of it.

This bill of indictment charges that Dr. S. A. Johnston unlawfully did sell and offer for sale spirituous, vinous, malt and brewed liquors and admixtures thereof without first having obtained a license so to do, contrary to the form of the act of assembly in such case made and provided.    It is based upon this section of the act : " Any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous,

malt or brewed liquors or admixtures thereof without a license shall be sentenced," etc. Dr. Johnston does not set up that as a defense, but sets up as his defense, first, that he is a druggist and apothecary; that he had a right to make sales, either by himself or his agent, and to fill prescriptions given him by a regularly registered physician. The 16th section of this act reads like this : " That druggists and apothecaries shall not be required to obtain license under the provisions of this act, but shall not sell intoxicating liquors except upon a written prescription of a regularly registered physician, and anyone violating the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be subject to the same penalties as provided in the 15th section of this act, and provided, that no spirituous, vinous, malt or brewed liquors shall be sold or furnished to any person more than once on any one prescription of a physician."

Dr. Johnston also sets up in defense to this charge, that the liquors that were sold were sold by his clerks or agents or employees in his store, and if any were sold without the lawful prescription that it was sold against his will, against his knowledge, and against his orders to his clerks, and that he should not be held criminally liable for their actions in the premises ; that if any liquors were sold to any persons more than once upon a prescription of a regularly registered physician, that it was against his will and orders and without his knowledge, and that he is not responsible therefor in the criminal courts.

This, gentlemen, to a certain extent raises a question of law on the construction of this act of assembly that our Supreme Court has not yet decided. The law was passed in 1887, and the Supreme Court has decided on several questions arising under its construction, but it has not fairly as yet decided whether or not the principal or proprietor is responsible criminally for the selling by his agent or servant in the line of his duties. It is in proof here, and it is admitted by the defendant, that he owns the store and has been running the store since September, 1894 ; that he had in his store as clerks or pharmacists and assistants one man by the name of McClaren and another named Kahle, and as assistant a man by the name of Charles Wuller. The commonwealth has offered a number of witnesses here who testified as to getting liquor from this store, and from

these clerks, different ones, at different times within the last
year. These several witnesses testify that they got liquor more
than one time on one prescription; that when they handed their
prescription up to the clerk, the clerk did up the package and
sometimes put the prescription in the package and sometimes
pushed it back. You recollect the testimony; one or two wit-
nesses say they received over a dozen times on the same pre-
scription, somebody saying that he carried the prescription until
it was worn out. There was some testimony here on the part
of the commonwealth as to sales made without prescriptions;
you may recollect that yourselves and bear it in mind, what-
ever it is. Mr. Charles B. Wuller testified that Dr. Johnston al-
lowed him to make sales and return the prescriptions and refill
them, and that on one occasion Dr. Johnston's brother-in-law,
Os. Campbell, came in and wanted it without a prescription, and
that he refused to give him and that he went out; the doctor
is also a dentist, and he went to his office and brought him in;
he saw no prescription, but on the doctor's statement and com-
mand he filled the prescription. Dr. Johnston denies that he
allowed Wuller to sell more than once on one prescription.

[The defendant in this case offered to show to the jury by
Dr. Johnston that he instructed his clerks not to sell without
a prescription and not to sell more than once on one prescrip-
tion. This offer was excepted to and the court sustained the
objection and refused to hear the testimony, believing that this
act of assembly which is peculiar to this case does not recog-
nize the right of clerks and servants to violate the law, and that
if they do sell, either without prescription or sell more than once
upon one prescription, that it is a criminal act in the clerk, and
also a criminal act in the owner of the store.] [5]   This is not
the general rule of law as to agents and servants. The general
rule is that where an agent or servant violates the law, that his
principal or employer is not liable in the criminal courts unless
he had knowledge of it and permitted it, and that principle is
based upon the fact that no man can be convicted of a crime
unless he did it willfully, with the intention of committing a
crime, but this act of assembly is drawn in strong language, and
our Supreme Court has passed upon one or two features in it.

In the first place, the 17th section provides that it shall not
be lawful for any person, with or without license, to furnish by

sale, gift or otherwise, to a minor or to a man of intemperate habits. Two hotel men in Erie county, a man by the name of Carlson and one named Tuttle, had license, and they sold to a man who had every appearance of being over twenty-one years of age, and I believe they asked him as to his age, and he represented himself as being over twenty-one, I think twenty-three; his appearance indicated and his word supported it, and the matter was brought before the court of Erie county to revoke the license of these men for so violating the law. They set up as their defense that they did not know that this minor was a minor; that they believed that he was over twenty-one years of age, about twenty-three, and that he had so represented to them, and that they had no thought or intention of violating the law. Judge GUNNISON, of that county, revoked the license on the ground that the act of assembly did not use the words "willfully furnish," and that as the words "willfully furnish" were left out, therefore the ignorance of the hotel men as to the age of this person was no defense to their action, and revoked the license. Both decisions were carried up to the Supreme Court, and the Supreme Court sustained Judge GUNNISON in that view of the law, and held it as the law that it is not necessary that the violater of the law in that particular shall have knowledge, and the intent of the party at the time is entirely immaterial.

Sometime afterwards, James Sellers, a hotel man in this town, owning what is now called the Park Hotel, sold to some minors and intemperate men, I believe, and the same defense was set up by him. He was convicted in this court. It went to the Supreme Court, and the court here was sustained, and the court in an opinion in this case said that it was not necessary to aver in the indictment that he did it willfully, that that was not the question. A man by the name of Zelt, in Fayette county, of this state, was charged and indicted for selling to men of intemperate habits, and the court ruled on the case, taking for authority the Sellers case and the Carlson and Tuttle case from Erie county, and there decided that the same principle that applied to minors would apply to men of intemperate habits, and sustained the court below in its decision.

Judge PAXSON, chief justice of the Supreme Court at the time, used this language: "This ignorance is not a sufficient excuse or justification under the act of assembly. If such a

defense could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes. In Com. v. Sellers, 130 Pa. 32, and in Com. v. Holstine, 132 Pa. 357, it was held that to sustain a conviction for unlawfully selling intoxicating liquors under the act of 1887, it is not necessary for the commonwealth to prove a criminal intent; if the sale be contrary to law the intent is immaterial. We are of opinion that selling liquor to persons of known intemperate habits comes within the same rule as selling to minors, i. e., the intent is not material. The words in the statute, ' persons of known intemperate habits,' are descriptive of a class to whom the dealer sells at his peril."

Now, gentlemen, that is not quite this case. In these cases which we have cited, which have been ruled upon, the sales, for all we know, were made by the owner. I am not sure that that is the case, but so far as the record appears it is, and we take it for granted that that is right. [Now, we come to another question that has not reached the Supreme Court, or if so we are not advised of it, and that is: Is the man who owns the house or place in which the liquors are sold liable for sales of his clerks or servants, when they are made without his knowledge and without his consent and against his instructions ? This is a question that the Supreme Court will pass upon before it is settled law in the state, and very likely in this case. The act of assembly, 15th section, uses this language: "Any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous," etc. Now, it does not say how the sale is made, and the law recognizes the sale by the agent or clerk as the sale by the principal, and although the defendant may not have known that his clerk made this sale, nevertheless, following the ruling made by our Supreme Court in three or four cases, perhaps five, we would have to say that the principle is the same; that if there was no intent that it is immaterial and that the defendant is liable for this charge and guilty under the act of assembly, if the sale was made by his regularly authorized clerk or servant in the regular line and course of his business.] [6] Of course, if a man was keeping hotel and a man who was not his barkeeper, say for instance his hostler, would come into the bar, and without the knowledge or instructions of the hotel man would sell or give away liquor contrary

to law, the hotel man could not be held in that case, because
that man was not acting in the line of his business, and there-
fore in that he was not the agent or servant of the proprietor
for that business. That distinction can easily be drawn from
the facts. [We say to you as a matter of law that if you believe
Kahle, McClaren or Wuller, or either of them, within the last
year or at any time since Dr. Johnston took charge of this store,
whilst they were acting under his employment or acting for
him, sold to any person without a prescription or sold more than
once upon the same prescription, that that is a violation of the
act of assembly, the 15th section, and that it is your duty to
find him guilty in manner and form as he stands indicted. We
give you that as the law, to which an appeal will be taken to
the Supreme Court from your verdict.] [7]  If you find him
guilty in the manner and form as indicted, then the Supreme
Court will pass upon this question; we instruct you in that
way; I will not go over the testimony in this case. [You have
heard the testimony of a number of witnesses, Mr. Stein, Mitch-
ell, Gregg, Ford, O'Brien, Elliott, Borland, Mortimore, Scanlan,
Bester and Kopp. You heard their testimony. Can you on
your oaths say from their testimony that liquors, spirituous
liquors, generally whisky, were sold by the clerks without pre-
scriptions or more than one sale made upon one prescription?
If you believe that, then I repeat it, gentlemen, under your
oaths and under the instructions as to the law by the court, it
is your duty to render a verdict of guilty in manner and form
as he stands indicted.] [8]  The second count is out; you
only have one count to act on.

Another question was raised, and we want all these matters to
go to the Supreme Court fairly and squarely, so that we may
know what construction the highest court in this state will put
upon this act of assembly,—that is this, that Dr. Johnston was a
druggist and not amenable to punishment under a charge on
account of violating the 15th section, that is, selling liquor with-
out license, but there should have been a count in the indict-
ment charging a separate and distinct offense, to wit, that
Dr. Johnston was a druggist and apothecary and as such drug-
gist and apothecary sold without a prescription, and another
count setting forth that as such druggist and apothecary he sold
more than one time on one prescription; and they object to the

conviction of the defendant, even if proven guilty, because the crime as charged against the druggist was not set forth in the indictment and passed upon by the grand jury. That question was raised yesterday afternoon and the court ruled against it; but it was, as we term it, a nice question, what might be called, perhaps, a close question, and I took the pains to give the matter since then a careful examination, or as I thought as careful an examination as it was possible to give it in the same time. A man by the name of Frank Prickett was indicted for a similar offense; he was a druggist, a Montgomery county man, and the bill of indictment in the case charged, first, the ordinary violation of the 15th section of the statute; the second count charged that he was an apothecary and druggist and that he sold without a prescription; the third count charged that he was an apothecary and druggist and that he sold more than one time on the same prescription, and the court charged the jury and the jury found a verdict of guilty in the manner and form as indicted, without saying on which count. The case was taken up to the Supreme Court and the Supreme Court decided that there was no error in the court below, but did not decide the question as to whether there should have been two counts in the indictment, one charging the druggist with selling without prescription, and another charging the druggist with selling more than one time on one prescription. The testimony was not taken up to the Supreme Court, and there was nothing to show but what there was testimony enough to find upon the first count, therefore the Supreme Court said (the case is decided in 132 Pa. 374): "But druggists, strictly speaking, are not licensed. They are not required to take out a license; they may sell in the manner indicated in the act, and, if charged with selling liquor unlawfully, can only defend by showing that the sale was upon a physician's prescription. We are not called upon to discuss this question, much less to decide it, as it is not raised by the record." So that the Supreme Court there did not decide that question, but we say to you, gentlemen, for the present, that the indictment here is sufficient; that it covers the charge; that there is not a distinct offense by a druggist, but that this offense should be treated like all other offenses, and when he makes a defense he has a right to show a prescription, and that is a good defense. [So we repeat, if you believe

the testimony of the witnesses here in this case, and believe that the commonwealth has shown you that intoxicating liquors were sold by these clerks without prescriptions or more than once upon the same prescription, it would be your duty under the law to return a verdict of guilty in the manner and form as he stands indicted.] [9]

The defendant has put some points to the court which we are to answer:

3. The defendant cannot be convicted on this indictment for sales of such liquors made by his agents, salesmen or employees in his absence, and without his knowledge or consent.

We refuse that point, and say to you, as a principle of law, he can be convicted. [1]

4. That the defendant cannot be convicted on this bill of indictment for selling without a license, although his agents or employees may have sold, or furnished such liquors to persons named therein more than once on the same prescription.

We refuse that point. It is not the law. [2]

5. There being no evidence to submit to the jury that the defendant himself sold any liquors without a prescription, nor more than once on the same prescription, the defendant cannot be convicted.

We cannot affirm that point. You heard the evidence of Charles Wuller as to what occurred with Os. Campbell, and you heard all the testimony. We leave the question for you to decide from the evidence. [3]

6. If the employees or salesmen of the defendant sold vinous, spirituous, malt, or brewed liquors in violation of the law, contrary to defendant's instructions, in violation thereof, and without his knowledge, he is not liable for such violation of law, and cannot be convicted therefor.

We refuse that and say that is not the law. [4]

Now, gentlemen, there is nothing more that I can think of that is important and material, and we submit this matter to you, expecting that before a year goes around that we will have a definite decision from the Supreme Court on this question.

We will not take the question from the jury, but we will ask you whether or not you find a verdict here in the box or retire?

Jury brought in for further instructions.

Gentlemen of the Jury: Yesterday the commonwealth offered

the testimony of Martin Reisenman to show that he had hauled a dozen barrels of whisky to the doctor's store within the last year. We want to strike that from the testimony. It does not make any difference how many barrels he hauled there. The question is, how many were sold? We strike that out and say that so far as his testimony is concerned you need give that no attention. There is no proof that there were twelve barrels sold. You heard the proof as to what was sold. The question is, how many were there prescriptions for.

Verdict, guilty. Sentence $1,500, fine, costs, and seven months' imprisonment in the county jail.

*Errors assigned* were, (1–4) answer to defendant's points as above; (5–9) charge of the court as appears above in brackets; (11) testimony of Charles Mitchell; (10–13) allowing testimony as to quantity of liquor bought and sold; (14) offer of testimony, above recited.

*J. M. Thompson*, of *Thompson & Son*, and *S. F. Bowser*, with them *E. L. Ralston*, for appellant.—If a sale of liquor is made by a servant without the knowledge of the master and in opposition to his will and in no way participated in, approved or countenanced by him, the master ought to be acquitted: Miller v. Lockwood, 17 Pa. 253; Zeigler v. Com., 22 W. N. C. 111; Com. v. Stevens, 153 Mass. 421; Com. v. Briant, 142 Mass. 463; Com. v. Wachendorf, 141 Mass. 270; Com. v. Hayes, 145 Mass. 295; Com. v. Junkin, 170 Pa. 195; Wagner v. Haak, 170 Pa. 495; 4 Am. & Eng. Ency. of Law, 703; Com. v. Putman, 4 Gray, 16; Wharton's Crim. Law, sec. 2436; Hipp v. State, 5 Blackford, 149; Hale's Pleas of the Crown, 114; Rex v. Huggins, 2 Ld. Raymond, 1574; Pennybaker v. The State, 2 Blackford, 484; Hiler v. The State, 4 Blackford, 552; U. S. v. Wilson, 1 Baldwin, 100; Lathrope v. State, 51 Ind. 192; Com. v. Nicholas, 43 Am. Dec. 432; Com. v. Park, 1 Gray, 553; Overholtzer v. McMichael, 10 Pa. 139; Com. v. Gillespie, 7 S. & R. 469.

In Com. v. Park, 1 Gray, 553, frequently cited as against our view the sale made by an agent was made in the presence of the master who was paid for the liquor.

The court practically directed the jury to enter a verdict of

guilty which was an interference with the constitutional guaranties of the defendant: Hindson v. Markle, 171 Pa. 145; Durkin v. Coal Co., 171 Pa. 193; Kane v. Com., 89 Pa. 525; Nicholson v. Com., 91 Pa. 390.

*A. M. Christley* and *W. A. Forquer*, with them *Ira McJunkin* and *A. G. Williams*, for appellee.—Nowhere in the act is the intent or scienter made or constituted an element or essential ingredient of guilt necessary to convict of the violation of any of its provisions, and hence we say that in the mind of the legislature intent was immaterial. The intent has nothing to do with it. A contrary ruling would fritter away the act of 1887 and convictions under it would be rare: Tuttle's License, 127 Pa. 331; Com. v. Sellers, 130 Pa. 32; Com. v. Holstine, 132 Pa. 357; Com. v. Zelt, 138 Pa. 615; 4 Am. & Eng. Ency. of Law, 681; McKibben v. State, 40 Ark. 480; Clifton v. State, 73 Ala. 473; 4 Am. & Eng. Ency. of Law, 681; State v. Hurds, 19 Neb. 316; Snyder v. State, 81 Ga. 753.

A druggist is liable for illegal sales of intoxicants made by him as well as his agent: State v. Thompson, 74 Iowa, 119; Elwood v. Price, 75 Iowa, 228; Com. v. Perry, 148 Mass. 160; Com. v. Lafayette, 148 Mass. 130; Com. v. Merriam, 148 Mass. 425; State v. Kittelle, 110 N. C. 560; State v. Wool, 86 N. C. 708; State v. McBrayer, 98 N. C. 619; State v. Scoggins, 107 N. C. 959; State v. Lawrence, 97 N. C. 492; Farrel v. State, 32 Ohio St. 456; Dudley v. Sautbine, 49 Iowa, 650; 2 Whart. Crim. Law, 1503; Carroll v. State, 63 Md. 551; State v. Denoon, 31 W. Va. 122; State v. Dow, 21 Vt. 484; 11 Am. & Eng. Ency. of Law, 718; Rex v. Gutch, Moody & M. 433; 1 Taylor on Evidence, 827; State v. Wallace, 94 N. C. 827; McCutcheon v. People, 69 Ill. 606; Noecker v. People, 91 Ill. 494; Moyler v. State, 47 Ark. 110; Edgar v. State, 45 Ark. 356; Waller v. State, 38 Ark. 656; Loeb v. State, 75 Ga. 258; Snyder v. State, 81 Ga. 753; Whitton v. State, 37 Miss. 379; Riley v. State, 43 Miss. 397.

Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible: People v. Roby, 52 Mich. 577; 2 Whart. Crim. Law, sec. 1503.

OPINION BY WILLARD, J., July 16, 1896:

From a careful examination of the testimony in this case it is apparent that the sins of omission and commission on the part of this appellant were perhaps quite sufficient to have convicted him of the offense charged in the indictment. The commonwealth however was not satisfied to rest the case on the evidence of the appellant's own transgressions, but sought to visit upon him the sins of his clerks and hold him criminally responsible for illegal sales of liquor made by them in direct violation of his specific orders. The appellant's counsel offered to prove by the appellant's testimony that he was the owner and proprietor of the drug store in question; that he had a registered pharmacist and an assistant in charge of said store; that he instructed them particularly in regard to the manner in which he desired them to conduct his business; that he instructed them not to sell any intoxicating liquors to any one except upon a prescription of a regularly registered physician and for medicinal purposes, and not to sell to any one except on such prescription. And further, they should not sell more than once on any one prescription; and further, that if any sales of liquors of any kind were made in contravention of these orders and instructions, they were made in his absence, against his authority and without his knowledge. This offer was refused and the testimony excluded by the court. On the same question the appellant asked the court to charge the jury that "If the employees or salesmen of the defendant sold vinous, spirituous, malt or brewed liquors in violation of the law, contrary to defendant's instructions, in violation thereof and without his knowledge, he is not liable for such violation of law and cannot be convicted thereof." The court answered the point, "We refuse that and say it is not the law."

This raises the question squarely whether a man can be convicted of a crime perpetrated by his agent in doing an illegal act which he had been specifically ordered not to do by his principal.

While we are satisfied that there was sufficient evidence to convict the appellant, he was entitled to a fair trial by a jury of his peers under proper instructions from the court. He was charged with the commission of an offense against the laws of the commonwealth, and while it is our duty and pleasure to

uphold and enforce the statute under which he was indicted, we cannot sanction by our judgment the rule adopted by the trial judge in excluding the appellant's offer and his instructions to the jury that it was immaterial whether the liquor was sold by the appellant himself or by his agent, though contrary to his express orders and instructions. The argument that if the rule were otherwise than as declared by the trial judge the door would be thrown open for the violation of the law by reason of orders from principal to agent not given in good faith, but as devices for the sole purpose of evasion, cannot be entertained.

We are to presume men innocent until proved guilty, we are to presume that there are honest men engaged in the sale of intoxicating liquors, and that there are honest druggists engaged in legitimate business entitled to sell liquors for medicinal purposes on a proper prescription from a proper and authorized physician, and that they have a right to employ agents to assist them and to prescribe rules in good faith for the government of such agents and to prescribe a line of conduct within the scope of their employment, and to prohibit any unlawful act not authorized by their employer.

Every lawful instruction from principal to agent is to be considered as given in good faith until the contrary is shown and then the bona fides of the instruction is for the jury. Under no other rule can the rights of honest men be preserved, and they are entitled to invoke this rule notwithstanding the fact that some dishonest men may perchance escape just punishment under its shield.

This is not a case involving civil liability, where the principal may be held in damages for the fault and misdoing of his agent with which he had no further connection than that which arises from the fact that the injury was occasioned by an employee in his service; the civil liability of the principal exists, even though he prohibited the sale, on the ground of the civil liability of the master or principal for the torts of the servant.

Ordinarily the principal is not held criminally responsible for the acts of his servant or agent unless he in some way participates in, countenances or approves the criminal act of the agent, nor can a principal be held criminally liable for the act of his agent in opposition to his will and against his orders.

Where the statute authorizes the wife to recover damages against a landlord for sales to her husband after notice not to sell to him, the rule in civil actions applies, and the defense that the liquors were sold by a barkeeper contrary to the orders of the landlord, will not prevail.

We are to consider this case in its true light. This appellant was indicted for a crime. The rules of evidence and the rules of law applicable to criminal cases must be applied to and enforced in this case.

The appellant was indicted and tried in the court below under the 15th section of the act of May 13, 1887, which is as follows ; " Any person who shall hereafter be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquors or any admixture thereof without a license, shall be sentenced to pay a fine of not less than five hundred dollars nor more than five thousand dollars, and undergo an imprisonment in the county jail of not less than three months nor more than twelve months." That part of the 16th section pertinent to this case is here inserted, " Druggists and apothecaries shall not be required to obtain a license under the provisions of this act, but they shall not sell intoxicating liquors, except upon a written prescription of a regularly registered physician; alcohol, however, or any preparations containing the same, may be sold for scientific, mechanical or medicinal purposes. Anyone violating the provisions of this act shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to the same penalties as are provided in the 15th section of this act: *Provided* that no spirituous, vinous, malt or brewed liquors shall be sold or furnished to any person more than once on any one prescription of a physician."

The above quotations from the statute are inserted as they have a material bearing upon the question under consideration.

While it was stated by the learned trial judge in his charge to the jury and by the learned counsel for the appellee in his argument that the precise question here involved had not been decided by our Supreme Court, as authority sustaining the court below we were referred to Carlson's License, 127 Pa. 330 ; Commonwealth v. Sellers, 130 Pa. 32; Commonwealth v. Holstine, 132 Pa. 357 ; Commonwealth v. Zelt, 138 Pa. 615.

The first of these cases was an appeal from the order of the

court of quarter sessions of Erie county revoking the respondent's license. At the hearing on the rule to show cause Carlson, the respondent, admitted that he sold beer to minors and gave as his excuse that he did not know that the persons to whom he sold were under age.

In Commonwealth v. Sellers, the defendant was indicted for selling to minors. The court below overruled the motion to quash the indictment, the reason assigned for quashing being that it was not therein averred that the liquor was knowingly and wilfully furnished by the defendant. The court also refused to declare the act of May 13, 1887, unconstitutional. The Supreme Court affirmed the court below.

In Commonwealth v. Holstine, the defendant was the driver of a beer wagon in the employ of one Otto who had a license for the sale of beer in the county of Philadelphia, and there had his place of business. Holstine sold beer in Montgomery county without a license. It was held that he was properly convicted.

In Commonwealth v. Zelt, the defendant was convicted of selling liquor to a man of known intemperate habits. It was held that he was properly convicted, and whether he had knowledge or not the sale was illegal and made at the peril of the defendant under the law.

We conclude from a careful consideration of these cases that they do not sustain the rulings and instructions of the trial judge. It will be observed that the defendants in the above cases were the licensees themselves, charged with the execution of the conditions contained in their warrants from the courts of quarter sessions under the laws of the commonwealth, but does the law require the proprietor of a hotel to perform the physical impossibility of standing behind his bar at all hours and at all times? Must a druggist stand at his counter without intermission? Does the law deprive these people of the ordinary privileges of life? May they not employ assistants in and about their business as other business men do? There can be but one rational answer to these questions; they have the right to employ agents to assist them, and while the cases referred to do hold them answerable for sales made by themselves and prevent them from pleading ignorance of the knowledge of the nonage or intemperate habits of the persons to whom they sell,

they do not decide that they may not employ agents nor do they hold them criminally liable for illegal sales made by such agents contrary to the express instructions given in good faith by their employers. Upon this question we cite the very pertinent case of Commonwealth v. Stevens, 153 Mass. 422. The facts were, the defendant was a druggist and was authorized by his license to sell intoxicating liquors for certain purposes, but not to minors. One of his clerks made a sale to a minor, and the principal question at the trial was whether the defendant was criminally liable therefor. There was evidence that he had instructed all of his clerks not to make sales to minors, nor indeed to any person under twenty-five years of age. The learned judge, before whom the case was tried, instructed the jury that if they were satisfied that these instructions were given by the defendant but that the clerks were to determine the question of minority simply from the appearance of the customer, and that the defendant authorized and permitted them to sell without further inquiry if they believed such person to be twenty-five years of age or upwards, and that the clerk who made the sale in this case applied this test and in good faith sold to this customer, then the defendant would be liable, even if he had no personal knowledge of this sale, because the servant in such case was carrying on the defendant's business in the way he was instructed, and obeyed his instructions, and that under such circumstances the act of the servant would be the act of the master. In reversing the judgment Mr. Justice ALLEN in delivering the opinion of the Supreme Court of Massachusetts said, " The servant himself is no doubt responsible, because he made a sale, however innocently, which the law forbade him to make; but if he reasonably and honestly believed the purchaser to be of adult age and that the sale might lawfully be made, his statutory guilt should not be imputed to the defendant. Though the defendant would have been responsible for his own mistake if the sale to the minor had been made by him, it seems to us to be carrying the doctrine of criminal responsibility for the acts of another quite too far to convict him by reason of an honest mistake on the part of his clerk, provided the jury should find that the master sincerely and honestly intended that his instructions should be followed in good faith." In that case the

court also held that " an employer is not criminally responsible
for the illegal sale of intoxicating liquors to a minor by an
employee, if the employer's instructions, given in good faith
not to make such sale permit the employees to determine the
question of minority from a customer's appearance simply, and
the sale is made under an honest or mistaken belief that the
minor is an adult."

Commonwealth v. Wachendorf, 141 Mass. 270, was an indict-
ment charging that the defendant unlawfully sold intoxicating
liquor between the hours of 11 at night and 6 in the morn-
ing contrary to the statute of Massachusetts. At the trial it
appeared that the defendant kept a restaurant and saloon, and
that he had a license, one of the conditions of which was that
no sale of spirituous or intoxicating liquors should be made
therein between the hours of 11 at night and 6 in the morn-
ing. There was evidence tending to show a sale by one of
the defendant's waiters after 11 o'clock at night on the day
named. The defendant introduced evidence to show that he
had given strict orders to close the sale of intoxicating liquors
at 11 o'clock at night, and asked the court to rule " that if one
of his employees willfully, or in violation of his instructions had
sold a bottle of ale on that night after 11 o'clock, such a sale
would not make the defendant liable under this law." The
court refused this instruction and instructed the jury that the
license was violated if any sale was made after 11 o'clock,
though by a servant in violation of the instructions of the de-
fendant. Chief Justice MORTON in reversing the court below
says " Section I. upon which the complaint in the case at bar
is based, subjects to punishment any person who sells liquor un-
lawfully. It is to be presumed that the legislature intended to
use the language in its natural sense, and with the meaning
given to equivalent language by the court in Commonwealth v.
Nichols, 10 Metcalf, 259. It is not a necessary or reasonable
construction to hold that it subjects to punishment a person
who does not sell, because a servant in his employment in op-
position to his will and against his orders makes an unlawful
sale. We are therefore of the opinion that the instructions
requested by the defendant should have been given. Of course
it would be for the jury under the instruction to determine
whether the defendant did, in good faith, give instructions,

intended to be obeyed and enforced, that no sale should be made after 11 o'clock. If he did and the sale was made in violation of them without his knowledge he cannot be held guilty of the offense charged in the complaint." To the same effect is Commonwealth v. Nichols, 10 Met. 259; Commonwealth v. Putman, 4 Gray, 16.

The statute of Ohio declares that it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors in the cases specified in the act.

In Anderson v. State, 22 Ohio, 305, on an indictment for unlawfully selling intoxicating liquor to a minor in violation of the statute the defendant asked the court to charge that if Ingersoll, Anderson's agent, made said sale in violation of the instructions of his principal and contrary to his known wishes, the defendant would not be liable for said sale; but the court refused to so instruct the jury and charged " That if Ingersoll was employed as agent for defendant to sell intoxicating liquors according to law, and in the course of said employment, did make the sale charged in the indictment, the defendant was liable therefor, though said sale was made in violation of his express and positive instructions." WHITE, Justice, in delivering the opinion of the Supreme Court of Ohio reversing the judgment of the court below says: " In giving construction to the statute, the court below applied the rule in civil cases which holds the principal as to third persons liable for the acts of his agent done within the general scope of his authority, irrespective of actual instructions that were unknown to the person dealing with the agent. In such case as between the principal and a third party dealing with the agent on the faith of his apparent authority, the law conclusively presumes the actual authority of the agent to be what it openly appears to be; while as between the principal and agent the extent of the actual authority may be shown . . . . Strictly speaking the legal relation of principal and agent does not exist in regard to the commission of criminal offenses. All who participate in the commission of such offenses are either principals or accessories. In offenses less than felony all are principals. But when it in fact appears that a person actually in no way participated in the commission of a criminal act, he ought not by construction to be made punishable for it." To the same effect is La-

thrope v. The State, 51 Ind. 192; O'Leary v. State, 44 Ind. 91; Commonwealth v. Nichols, 10 Denio, 259.

In Barnes v. State, 19 Conn. 397, on an indictment for selling spirituous liquor to a common drunkard contrary to the statute of Connecticut, the defendant offered to prove in the court below that he had given his clerk specific instructions to sell no liquors to persons addicted to habits of intoxication, nor to any common drunkard; the evidence so offered as conducing to prove that his clerk in making such sale did not act as his agent.

The court below excluded the evidence. Held by the Supreme Court on appeal that this was error. Mr. Justice ELLSWORTH, in delivering the opinion of the court, used the following language : " We are aware, as already intimated, the master is sometimes made responsible civilly for his servant's misconduct. This responsibility may grow out of an express or implied undertaking that the thing to be done should be well done, or out of that great principle of vigilance imposed upon the master that he must see his business is conducted so as not to injure others, and that his servants shall be duly attentive and prudent. But the master is never liable criminally for the acts of his servant done without his consent and against his express orders." This case was tried in the court below and a verdict rendered December 13, 1895. On the 18th day of July of the same year Mr. Justice DEAN delivered the opinion of the Supreme Court in Commonwealth v. Junkin et al., 170 Pa. 197, which we think decisive of the principal question of this case. Junkin and his partner Sponsler being private bankers were indicted under the act of May 9, 1889, for receiving a deposit with the knowledge that their banking institution was insolvent at the time the deposit was received at the bank. The act is as follows : " That any banker, broker or officer of any trust or savings institution, national, state or private bank, who shall take and receive money from a depositor, with the knowledge that he, they or the bank is at the time insolvent, shall be guilty of embezzlement and shall be punished by a fine in double the amount so received, and imprisonment from one to three years in the penitentiary." On the trial it was undisputed that both defendants knew the bank was insolvent so that the question of knowledge of insolvency did not enter into the point decided, and for the purpose

of this case the statute may be read as if the words "with the knowledge that he, they or the bank is at the time insolvent" were omitted. The evidence was that the insolvent condition of the bank was fully known to defendants on the 23d of March, and this was not disputed; on the 24th of March, Willis, the cashier, was ordered by Junkin, one of the defendants, (who was sick and unable to leave his house at the time), not to receive further deposits in the bank. Willis replied that he could not open the bank without taking deposits, to which Junkin replied, "If you persist in opening the bank against my order, then take care of yourself, and if you receive deposits then make special deposits of them, put each up by itself and put it by itself, and return it to the depositor." Willis was the cashier in charge of the bank. It appeared that after the orders were given a deposit was received which was not put by itself as a special deposit but was returned the next day to the depositor. Under this testimony the trial judge was requested by defendants to charge the jury as follows : " If the jury believe from the evidence that Willis was ordered not to take deposits on the 24th of March, 1894, the day the money of Rice was taken, and if the money was taken it must be returned, the verdict must be 'not guilty.'" Answer of the court: "This point is denied. We do not think the question as to whether the money deposited was to be returned, or the fact that it was afterwards returned is material to the case." On an appeal to the Supreme Court the court decided that if Junkin had been present himself and received the deposit in a special manner as he had ordered, and returned it to the depositor the next day, he would not be guilty under the statute. Mr. Justice DEAN in delivering the opinion says : " If Junkin himself would not have been guilty, had he, under such circumstances, specially received the money, he would not be answerable criminally if he instructed his agent to so receive it. Whatever may be the answerability of the principal for the wrongful act of his agent in civil actions, he is not answerable criminally when the act is in positive disobedience of his explicit instructions. Willis was the agent in control. Bonsall was his subordinate. Whether the neglect to specially mark Rice's deposit was willful or inadvertent on their part, the act cannot be imputed to Junkin whose orders were directly to the contrary."

We have carefully examined this case and given it due consideration, but cannot affirm the trial judge in most of his rulings, instructions and conclusions; they are erroneous and must be corrected.

Under the authorities cited and for the reasons expressed in this opinion, all the assignments of error are sustained except the second, third, tenth, eleventh, twelfth and thirteenth. The answers to requests for charge, made the subject of error in the second and third assignments, were correct as the points were put to the court. The tenth, twelfth and thirteenth assignments are without merit. The judge corrected the error before the jury and the defendant was not harmed thereby. As to the eleventh assignment it is sufficient to say this defendant was indicted for selling without a license under the 15th section of the act. He attempted to excuse himself and defend as a druggist under the 16th section. Had he kept himself within the provisions of the latter section his defense would have been good. If he can on another trial show that he has not violated the provisions of that section he cannot be convicted as he stands indicted, otherwise he can be convicted as any other unlicensed person can for selling liquor without a license.

The judgment is reversed and a venire facias de novo awarded.